### DETERMINED IN

# THE SUPREME COURT

#### OF THE

# STATE OF CALIFORNIA.

[No. 13221. In Bank.— January 31, 1890.]

## GEORGE W. GEER, RESPONDENT, v. L. B. SIBLEY, APPELLANT.

STATE SWAMP-LAND — APPLICATION TO PURCHASE — KNOWLEDGE OF BOUNDS. — When swamp-land sought to be purchased from the state is covered with water, except in one corner of the section, and on this dry land the applicant finds and locates by his surveyor the government stake and also finds and locates other government stakes on the boundary lines of the section, and his surveyor points out and shows to him by survey three of such lines, and the remaining line could easily be determined, from the knowledge of the other three, the knowledge so obtained is sufficient to satisfy the statutory requirement that the applicant must know the land applied for, and the exterior bounds thereof.

FINDINGS — SPECIAL FINDINGS — ARGUMENTATIVE GENERAL FINDING — SUPPORT OF JUDGMENT — APPEAL. — When a general finding of fact is drawn as a conclusion of fact from special findings of fact which precede it, and which are inconsistent with the general conclusion of fact, the special findings will control the general finding, and a judgment supported by the general finding, but not by the special findings, will be reversed upon appeal, as not being supported by the findings.

APPEAL from a judgment of the Superior Court of Tulare County.

The facts are stated in the opinion.

LXXXIII. CAL.—1

*Charles E. Wilson,* and *T. M. McNamara,* for Appellant.

*Lamberson & Taylor,* for Respondent.

FOOTE, C. — This was a contest in the superior court of Tulare County as to the respective rights of the plaintiff and defendant to purchase a section of swamp-land of the state. Judgment passed for the plaintiff, from which the defendant appeals.

The point made for the reversal of the judgment is, that the findings of fact do not support it.

The only ground relied upon in the complaint to defeat the defendant's right to purchase the land is, that his affidavit filed with the surveyor-general was false, in that it asserted that at the time of making it the defendant knew "the land applied for and the exterior bounds thereof," when he did *not* so know.

The court found, among other facts necessary to enable the defendant to recover, in finding 4, that "at the time of making and filing said affidavit and application defendant did not know of any valid claim to said land other than his own; he knew of his own knowledge that there were no settlers thereon, and he did not, and does not now, own swamp and overflowed land which, together with that sought to be purchased by him as aforesaid, exceeded 640 acres." But found, in the fifth finding, "that, immediately prior to the making and filing of his affidavit and application, the defendant went to the section of land in controversy in company with John Gilcrest, a practical surveyor, whom the defendant employed to survey and point out to him the said section; they found the northeast corner of the section, which was marked by the government stake standing at that point; the surveyor set up his instrument at this point, and turning it south, projected the east line of said section, and at his request the defendant looked through the instrument along said line, the surveyor at the same time informing him that he was looking along the east line of said sec-

tion, which line extended one mile from that point; the surveyor then turned his instrument west, projecting the north line of the section; the defendant looked through the instrument along this line, being at the same time informed by the surveyor that said north line extended one mile on that course; they then followed along said line to the quarter-section corner of said section in said line, at which point they found the government stake floating in the water, but confined by tules; the surveyor set his instrument at this point, sighting west on said north line, and the defendant looked through the instrument, being at the same time informed by the surveyor that the northwest corner of said section was located one half-mile west of said quarter-section corner in said line; they then went back and around to the southeast of section 1 in said township, and from there ran west to the southeast corner of the section, which they found marked by the government stake standing in the water; the surveyor set his instrument at this corner, looking west, and projecting the south line of the section; the defendant looked through the instrument along this line, being at the same time informed by the surveyor that he was looking along the south line of said section, and that the southwest corner thereof was located at a point in said line one mile west of said southeast corner, in the direction pointed by the instrument; at this time the section of land in controversy, except about ten or fifteen acres at the northwest corner thereof, was covered with the water of Tulare Lake; the defendant could see the entire surface of the water covering said section, and for two or three miles in either direction. From the foregoing facts the court finds that the defendant did not, at the time of making and filing his affidavit and application, know the land he applied to purchase, and in controversy herein, nor the exterior bounds thereof."

From this the court, as a conclusion of law, decided that the defendant was not entitled to purchase the land,

and that the plaintiff was so entitled, and rendered judgment accordingly.

The appellate court held in *People* v. *Reed,* 81 Cal. 76: "But conceding that the finding is one of fact, or, as counsel terms it, a 'conclusion of fact,' it is apparent that the court below did not intend to cut off the right of the appellant to test the sufficiency of the specific facts found to show such dedication in the manner indicated. This finding is based upon the other facts found. It recites, in terms, that, 'by the acts, facts, and matters above found, said premises were by said parties dedicated,' etc. It may be that if this finding had stood alone, and had not been put in this argumentative form, it might have been upheld as a sufficient finding of an ultimate fact. But this cannot be so where the facts are fully found, and the general finding of a dedication is expressly drawn as a conclusion from such facts. Counsel say it does not appear that the court found all the facts proved. But it does appear from the finding itself that it was based entirely upon the facts found, and not, in whole or in part, on facts proved but not found. Therefore, if the specific facts found do not support this one, which is a summing up of the others, the judgment should be reversed."

The supreme court, in *Price* v. *Beaver,* 73 Cal. 625, said: "It is claimed for the appellant that the finding 'that at said time she knew the land applied for, and the exterior bounds thereof, and knew of her own knowledge that there were no settlers thereon,' was not justified by the evidence; and this is the principal point made for a reversal of the judgment. We do not think the judgment should be reversed for the reason urged. . . . . It is true, the code requires any person desiring to purchase swamp and overflowed land to state in his affidavit 'that he knows the land applied for, and the exterior bounds thereof, and knows of his own knowledge that there are no settlers thereon.' (Pol. Code, sec. 3443.) And it is also true that in cases of this kind each

party is an actor, and must allege and prove that he has strictly complied with the law. But it is not required that the purchaser of swamp-land shall know 'of his own knowledge' the land applied for, and the exterior bounds thereof. Ordinarily he does not, and unless he is a skilled surveyor, must gain this information from others. Having gained it, however, he can, and must, then state, if such be the fact, that he knows of his own knowledge that there are no settlers on the land. The defendant was shown by her brother-in-law what he supposed to be the corners and boundary lines of the land in controversy. She relied and acted upon the information thus received, and there was no attempt to show that it was not correct. It is not pretended that she did not go upon the land which she desired to purchase, nor that she was incorrectly informed as to its bounds or limits, nor that there were any settlers on the land. The claim is only that J. W. Beaver did not *at the time know* the true lines and corners, and so, however correct her information may have been, her application must fail. If this be the correct view, then it must follow that if defendant had employed a surveyor to show her the land, and he had made mistakes as to the corners and lines, and had incorrectly located its bounds, her application could be successfully assailed by any subsequent applicant. We do not think that such a result was intended by the law-makers, or should receive sanction from the courts."

In the present case the point seems to be that the defendant did not know the exterior boundaries of the land applied for, because neither his own information, nor that derived from the surveyor he had employed, was sufficient to enable him to have such knowledge in the sense intended by the statute. But the findings of special facts show that the land was covered with water, except in one corner of the section, and that on this dry land the defendant did find and have located by his surveyor the

government stake, and that he and the surveyor also found another quarter-section stake on the north line of the section, and one upon the southeast corner of the section, and that from each of the stakes thus found the surveyor showed the defendant a prolongation of some one of the boundaries of the section, and the distance along them at which the other section corners were, and that they traversed at least one of the boundaries, and went to the southeast and northeast corner stakes and to the quarter-section stake on the north line, so that the defendant had pointed out and shown to him by a surveyor three of the boundary lines of the section, viz., the north, south, and east lines; and the west line could easily be determined, as it was the prolonged line between the northwest and southwest corners. Such knowledge so obtained under all the circumstances surrounding the matter, in the light of the construction given to the statute in the case just adverted to, and in the sense in which we believe it should be construed, must be held to satisfy the terms and spirit of the statute involved here.

It must, therefore, be apparent that the ultimate fact in finding 5 is manifestly inconsistent with the specific facts previously set out in the same finding, and the judgment is, therefore, without proper support. We advise that it be reversed.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed.