[Civ. No. 1231.   Third Appellate District.—September 11, 1914.]

## THOMAS H. BREEZE, Plaintiff and Appellant, v. INTERNATIONAL BANKING CORPORATION (a Corporation), Defendant and Respondent; LLOYD M. ROBBINS, Defendant.

ACTION TO RECOVER MONEY—FRAUD AS BASIS OF RECOVERY—FINDINGS—INCONSISTENCY BETWEEN PROBATIVE AND ULTIMATE FACTS.—In this action by a partner against his copartner and a bank to recover a certain sum of money on the ground that they conspired to induce him to transfer his interest in a partnership order for the payment of money, for less than its value, by concealing the fact that the order was to be paid by a solvent third person, wherein the plaintiff contends that the judgment in favor of the bank is not supported by the findings because of an inconsistency between the probative and the ultimate facts found by the court, it is held that there is no real inconsistency, and that even if there were the same would not support his appeal, since the ultimate facts were not based upon or deduced from the probative facts, nor in any degree dependent upon them.

ID.—FRAUDULENT ACTS OF PARTNER—NONPARTICIPATION BY CODEFENDANT—PRESUMPTION ON APPEAL.—Upon this appeal from the judgment upon the judgment-roll alone, the finding that the bank had no hand or took no part in the fraudulent acts by means of which the plaintiff was wrongfully deprived of his interest in the order, can rest upon the presumption, which must be indulged when the appeal, as here, is not supported by a bill of exceptions or statement or other duly authenticated record of the evidence, that there was received into the record evidence sufficient to justify and support it.

ID.—FINDINGS OF PROBATIVE AND ULTIMATE FACTS—INCONSISTENCY.—Where the trial court makes both probative and ultimate findings and the one set is inconsistent with the other, the former will not, in general, control, limit, or modify the latter.

ID.—APPEAL FROM JUDGMENT—CONSIDERATION OF PROBATIVE FACTS.—Upon an appeal on the judgment-roll alone, only the ultimate facts found by the court, not the probative facts which have no proper place in the findings, can be considered.

ID.—FINDING OF PROBATIVE FACT—WHEN CONTROLS ULTIMATE FACT.—It is only in those cases where it clearly appears that the ultimate fact found is based upon and educed from findings of probative facts, and it is plain that the latter do not justify or support the ultimate fact found, that the findings of probative facts will control that of the ultimate fact and so bereave the judgment of support.

ID.—PARTNERSHIP—DEALING BY PARTNER WITH THIRD PERSONS—AS-
SUMPTION OF GOOD FAITH.—Where a partner is dealing with a
third person respecting partnership money or property, the latter has
the right to assume that the partner is acting in perfect good
faith toward and with full authority from his copartners with
regard to the transaction, and the fact that it may appear that the
transaction, when consummated, will result solely to. the benefit of
the partner conducting it, constitutes no ground for an implica-
tion of fraud on his part toward the other partners in thus dis-
posing of or handling the partnership assets.

ID.—CONSIDERATION FOR SALE—CANCELLATION OF ANTECEDENT DEBT.—
The cancellation of an antecedent debt, due the vendee from the
vendor, for the sale of property, constitutes a valuable considera-
tion.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Charles H. Fairall, and Thomas H. Breeze, *in pro. per.,* for
Appellant.

Richard Bayne, and Pillsbury, Madison & Sutro, for
Respondent.

HART, J.—The plaintiff instituted this action for the pur-
pose of recovering from the defendants the sum of three
thousand two hundred and fifty dollars, together with interest
from the fourth day of April, 1907.

The trial court gave the plaintiff judgment in the sum of
$3,741.26 against the defendant, Robbins, but rendered judg-
ment in favor of the bank.

This appeal is prosecuted by the plaintiff on the judgment-
roll alone from that part of the judgment which was rendered
and entered in favor of the bank.

The gist of the complaint, in brief and in substance, is that
the defendants jointly entered into a fraudulent scheme
whereby Robbins was enabled to and did defraud the plaintiff
out of his share of a certain sum of money which was paid
to the bank and Robbins upon a certain order executed in
favor of and delivered to the plaintiff and Robbins as copart-
ners, the details of which transaction to be hereinafter more
particularly set out.

The allegations of the complaint are met by denials by the defendants, they having filed separate answers.

The ultimate question submitted by this appeal is whether the judgment in favor of the defendant bank is supported by the findings. The specific contention of the plaintiff is that the ultimate facts found by the court are inconsistent with and, therefore, not supported by certain probative facts likewise found.

The questions thus propounded will require an extended statement of the facts as found by the court. They are: The plaintiff and the defendant, Robbins, are lawyers by profession and, up to the tenth day of June, 1907, were copartners in the practice of the law. On the fifth day of September, 1905, one H. C. Stilwell retained said Robbins and Breeze as his attorneys in certain pending litigation to which he was a party, and on said day, for the purpose of compensating them for their professional services, he made, executed and delivered to Robbins & Breeze a certain order for the payment of the sum of seven thousand five hundred dollars, which was in the following words and figures:

"Sept. 5th, 1905.

"W. H. High, Esq.,

"M'g'r. International Bkg. Corporation,

"San Francisco.

"Dear Sir:

"Please pay Lloyd M. Robbins seven thousand and five hundred ($7500) dollars and charge same to my account and hold any securities that you may have in which I am interested, as security for the same.

"H. C. Stilwell."

On the day of the execution and delivery of said order to Robbins & Breeze, Robbins indorsed the same as follows: "Pay to International Banking Corporation. Credit to a/c of Robbins & Breeze. Lloyd M. Robbins."

The findings then proceed:

"IV. At the time Stilwell made and delivered this order he was the owner of a certain promissory note made to his order by the American Magnesite Company, a corporation, which note had theretofore been by him pledged to the defendant International Banking Corporation (hereinafter styled the bank) to secure the payment of certain monies which he then owed that defendant.

"V.   At that time and at the time of the deposit of this order by Robbins as hereinafter found, Robbins was indebted to the bank in the sum of two thousand nine hundred dollars.

"VI.   Robbins after so indorsing this order deposited it with and pledged it to the bank and the bank accepted it as collateral to secure the payment of the debt so owed by Robbins.   At the time of such deposit the bank knew and had full notice that the plaintiff was the owner of a half interest in this order.   The pledge of this order by Robbins was made wholly without the consent or knowledge of the plaintiff and he never consented thereto, but nothing further was ever done by the bank or by any one else under or by virtue of said pledge of the said order.

"VII.   The note of the American Magnesite Company to Stilwell had been pledged to the bank under an agreement whereby the bank was authorized upon maturity and nonpayment of the debt due from Stilwell to the bank, to sell the note at private sale and at the time of its sale, hereafter found, Stilwell had pledged to the bank and the bank held certain other securities owned by him, as further security for his indebtedness to the bank, subject also to the terms of that agreement.

"VIII.   On the 4th day of April, 1907, the indebtedness due the bank from Stilwell was matured and unpaid and on that date one A. B. Bowers made an offer to purchase the American Magnesite Company's note and the other securities so held by the bank as pledges, and to pay therefor a sum equal to the amount of the Stilwell indebtedness to the bank and also to give his note payable to the order of Robbins payable one year after date without interest for the sum of seven thousand five hundred dollars in lieu of and in substitution for the said order theretofore made and delivered by Stilwell as hereinbefore found.   Such offer was then and there accepted by the bank and by Robbins, but was not at any time by either of them communicated to plaintiff, and he was wholly without knowledge thereof until the 19th day of October, 1909.

"IX.   Bowers thereupon on the 4th day of April, 1907, gave his promissory note to the bank for the sum of twelve thousand seven hundred ninety-five and 90/100 dollars, the amount of Stilwell's indebtedness to the bank, which note was by him paid on the 25th day of April, 1907, and gave his note

payable to the order of Robbins payable one year after date without interest for the sum of seven thousand five hundred dollars and the bank thereupon sold to Bowers the American Magnesite Company's note and the other securities so by it held as pledgee.

"X. On the 6th day of April, 1907, Robbins represented to and told plaintiff that the bank had sold the American Magnesite Company's note and the other securities to Bowers for the amount of the indebtedness due from Stilwell to the bank, but Robbins did not at that time or at any other time tell or inform plaintiff that Bowers had given Robbins the promissory note, hereinbefore found to have been so given. Robbins at that time further represented to plaintiff that by reason of such sale Stilwell was practically insolvent and without present means or ability to pay his order, hereinbefore found to have been by him made and delivered. By means of such statements and representations Robbins induced plaintiff to, and plaintiff did, offer to sell all his right, title and interest in and to said order to Robbins for the sum of five hundred dollars.

"XI. On the 10th day of April, 1907, Robbins stated to plaintiff that he would accept such offer and stated that he had no reason to believe that the order would be paid but that he was willing to take a chance that it would be paid. Upon such representation and relying wholly and implicitly thereon and in total ignorance of the note which Bowers had given to Robbins, plaintiff agreed to assign his interest in the said order to Robbins, and upon the 11th day of April, 1907, Robbins paid plaintiff the sum of five hundred dollars and plaintiff assigned, set over and transferred all his interest in the order to Robbins. Plaintiff prior to said time had made no sale, assignment or transfer of his interest in said order to Robbins or to any one whomsoever.

"XII. Robbins' indebtedness to the bank on the 4th day of April, 1907, amounted to over ten thousand dollars, and continued in excess of such sum until the 25th day of April, 1907, when said note so given by Bowers to Robbins was paid as hereinafter found.

"XIII. On the 25th day of April, 1907, Bowers offered to Robbins to pay the sum of six thousand five hundred dollars forthwith in full satisfaction of said note, which offer was thereupon accepted by Robbins, and thereupon Bowers paid

the sum of six thousand five hundred dollars to the bank as pledgee of said note and on account of Robbins, in full satisfaction thereof, and the sum so paid was by the bank forthwith applied to the partial satisfaction and payment of Robbins' then existing indebtedness to the bank.

"XIV.  On the 6th day of May, 1907, plaintiff for the first time discovered that the said order so made and delivered by Stilwell had been paid by Bowers and plaintiff at once made inquiry both of Robbins and the bank whether or not Robbins knew that Bowers was going to pay the order, before plaintiff had so assigned, transferred and delivered his interest in the order to Robbins, and both Robbins and the bank denied that Robbins knew that Bowers was going to pay the order, at the time when plaintiff made such assignment.  Plaintiff made diligent search to discover whether Bowers had promised to pay the Stilwell order prior to the 10th day of April, 1907, and the said assignment by plaintiff to Robbins, but was unable to make discovery and had no knowledge or notice of that fact or of the note so given by Bowers to Robbins until the 19th day of October, 1909. . . .

"XVI.  The bank neither lent nor advanced the sum of five hundred dollars to Robbins, which Robbins paid to plaintiff as hereinbefore found, but the said sum of five hundred dollars was advanced by the father of Robbins, and the bank acted simply as the agent of Robbins in paying to Breeze the said sum of five hundred dollars.

"XVII.  Robbins did not inform the bank prior to the 4th day of April, 1907, or at any time prior to the 11th day of April, 1907, that plaintiff had assigned his interest in said order to him, Robbins, or that he, Robbins, had purchased plaintiff's interest in said order.  The bank believed and knew that plaintiff had an interest in said order until the 11th day of April, 1907, when plaintiff assigned and sold his interest.

"XVIII.  The bank never at any time informed plaintiff of the giving of the note by Bowers to Robbins.  The payment of the sum of five hundred dollars to plaintiff was made to plaintiff by Wm. H. High, the manager of the bank, for the account of Robbins, and the fact of the giving of the note by Bowers to Robbins, of the assignment by plaintiff of his interest in said order to Robbins, and of the payment of said note by Bowers were each and all fully known and understood by the bank at the time of the happening of each and at no time

did the bank make any inquiry or take any steps to learn whether or not plaintiff was aware of the existence of the note from Bowers to Robbins at the time when plaintiff made such assignment, and the bank had no knowledge at any time prior to the twelfth day of April, 1907, that, nor did it make any inquiry whether, Breeze had received a consideration in addition to the said sum of five hundred dollars paid by Robbins to Breeze, as hereinbefore found; nor did the bank have any knowledge at any time prior to the twelfth day of April, 1907, that, nor did it make any inquiry whether, Breeze did not know on or before the eleventh day of April, 1907, that Bowers had given to Robbins his note hereinbefore found to have been given.

"XIX. The bank never conspired or confederated together with Robbins or any one whomsoever, to induce plaintiff to sell his interest in said order for a sum very much below its real value or for any sum; never by any representations nor in any manner procured or induced plaintiff to assign his interest therein, and while it gave plaintiff no information of any of the facts hereinbefore found it never by any act or statement concealed any knowledge from plaintiff."

We are unable to discover any inconsistency between the alleged probative facts and the ultimate facts found by the court, and, even if there existed between them the inconsistency claimed by the plaintiff, we would still be at a loss to understand how that fact could support his appeal, since it is manifest that the ultimate facts were not based upon or educed from the probative facts.

Where the trial court makes both probative and ultimate findings and the one set is inconsistent with the other, the general rule is as it is declared in the case of *Perry* v. *Quackenbush,* 105 Cal. 299, [38 Pac. 740], as follows: "Findings of probative facts will not, in general, control, limit, or modify the findings of the ultimate fact. The province of the trial court is to find the ultimate facts, and not probative facts. If, from a consideration of the probative facts, this court should determine that they did not justify the finding of the ultimate fact, it would determine that the evidence did not justify the decision. This, it has been repeatedly held, cannot be done in this mode."

In *Pio Pico* v. *Cuyas,* 47 Cal. 174, 178, it is said: "It has been repeatedly held that a finding of the court cannot be

impeached upon the ground that it is contrary to the evidence otherwise than by a motion for a new trial and statement of evidence upon the motion. We can consider upon appeal from the judgment only the ultimate facts found by the court, and not the probative facts which have no proper place in the findings.'' (See, also, *Smith* v. *Acker,* 52 Cal. 217; *Frazier* v. *Crowell,* 52 Cal. 399; *Gill* v. *Driver,* 90 Cal. 72, [27 Pac. 64]; *Rankin* v. *Newman,* 107 Cal. 602, [40 Pac. 1024, 41 Pac. 304]; *Commercial Bank* v. *Redfield,* 122 Cal. 405, [55 Pac. 160, 772]; *Brown* v. *Mutual Reserve Fund Life Assoc.,* 137 Cal. 278, [70 Pac. 187].)

It is only in those cases where it clearly appears that the ultimate fact found is based upon and educed from findings of probative facts and it is plain that the latter do not justify or support the ultimate fact found, that the findings of probative facts will control that of the ultimate fact and so bereave the judgment of support. The enunciation and application of this rule is to be found in the cases of *People* v. *Reed,* 81 Cal. 70, 76 [15 Am. St. Rep. 22, 22 Pac. 474], and *Geer* v. *Sibley,* 83 Cal. 1, [23 Pac. 220]. In the Reed case, which was an action to secure a judgment adjudging a certain strip of land in the city of San Jose to be a public street of said city, the position of the city being that it had been so dedicated by certain acts of the owners of said strip, the supreme court reversed the judgment because the ultimate fact of dedication was obviously predicated upon but not supported by certain probative facts previously found. The finding of the ultimate fact read, in part: "That *by the acts, facts and matters above found and recited,* said premises referred to and described were by said several parties dedicated,'' etc. The court said: "It may be that if this finding had stood alone, and had not been put in this argumentative form, it might have been upheld as a sufficient finding of an ultimate fact. But this cannot be so where the facts are fully found, and the general finding of a dedication is expressly drawn as a conclusion from such facts. Counsel say it does not appear that the court found all of the facts proved. But it does appear from the finding itself that it was based entirely upon the facts found, and not, in whole or in part, on facts proved but not found. Therefore, if the specific facts found do not support this one, which is a summing up of the others, the judgment should be reversed." In

*Geer* v. *Sibley*, 83 Cal. 1, [23 Pac. 220], precisely the same proposition arose, the trial court having founded its findings of the ultimate fact upon findings of probative facts showing that the defendant rather than the plaintiff was entitled to judgment, the latter having prevailed in the court below. (See *People* v. *McCue*, 150 Cal. 198, [88 Pac. 899].)

In the case at bar, the gravamen of the plaintiff's charge against the bank is that it and Robbins "willfully, maliciously and with intent to defraud plaintiff, conspired and confederated together to induce plaintiff to sell his interest in the order for a sum very much below its real value, by concealing from plaintiff all knowledge of the fact that Bowers had offered to pay said order, and to apply the money to be received from Bowers on account thereof to the payment of the debt due from Robbins to the bank."

The court found, as above shown, that the foregoing allegation was not true in any respect, and that, while the bank gave the plaintiff no information of any of the facts characterizing the several transactions affecting the order from Stilwell to the plaintiff and Robbins and the money finally realized thereon, "it never by any act or statement concealed any knowledge from plaintiff."

There is nothing perceivable in the probative facts found, as an examination of them will readily affirm, which shows that the bank entered into a fraudulent scheme or in any manner or measure connived with Robbins in the defrauding of the plaintiff of his just share of the money which constitutes the subject of this controversy. There is, in other words, no statement among the probative facts from which the conclusion is forced that the bank's part in the transactions relating to the Stilwell order and the money realized therefrom was characterized by fraud or malversation of any character.

There are but two propositions deducible from the probative facts found by the court from which any implication of bad faith on the part of the bank in the transactions concerning the Stilwell order could by any possibility arise, and they are: 1. The fact that, in said transactions, the bank dealt entirely and solely with Robbins; 2. That the bank at no time in or during the several negotiations involving said order consulted the plaintiff or gave him any information with respect to those transactions. But we know of no rule of law which required

the bank, under the circumstances as disclosed by the findings, to inquire of the plaintiff whether Robbins's acts concerning said order and the money finally received thereon were sanctioned by him or not. The order and the money constituted the property of a copartnership of which Robbins was a member. He had the legal right to deal with the order and the money and to dispose of them, even to the satisfaction of his individual indebtedness, if that course were sanctioned by the plaintiff. And there is nothing in the mere fact that he did so dispose of the order and the money that would be sufficient to generate in the bank even a suspicion, much less a substantial reason to believe, that thus he was acting in bad faith with his partner or attempting wrongfully to appropriate or divert the property to his own individual purposes, to the detriment of his partner. Of course, we do not mean to say that one partner has the right to misappropriate the partnership property or funds, for he has no such right, and where he does do so, the other partner has, as is well illustrated by this case, his redress against the defaulting member of the firm for the wrong so committed. But what we do say is (to repeat) that where a partner is dealing with a third party respecting partnership money or property, the latter has the right to assume that such partner is acting in perfect good faith toward and with full authority from his partner or partners with regard to the transaction, and that, because it may appear that the transaction, when consummated, will redound solely to the benefit of the partner conducting it, constitutes no ground for the implication of fraud on the part of such partner upon the other partners in thus disposing of or handling the partnership assets. There is, therefore, in this case nothing in the mere transactions themselves relating to the Stilwell order which would tend to suggest to the bank fraudulent conduct of Robbins in said transactions toward the plaintiff, and hence there was no obligation cast upon the bank by the mere transactions themselves to prosecute an inquiry, before the consummation of the transactions, to ascertain whether they were authorized or sanctioned by the plaintiff, or, if carried out, they might or would work a fraud upon the partnership rights of the plaintiff.

But the fact is emphasized that the findings disclose that the bank communicated to Robbins alone the proposal of Bowers to take up the Stilwell order, furnishing the plaintiff

with no information relating thereto; that the bank, so it is asserted, loaned Robbins the five hundred dollars with which he purchased the interest of the plaintiff in the Stilwell order; that the bank made false statements to the plaintiff concerning the payment by Bowers of the note given by him in exchange for the Stilwell order, after that transaction had been consummated, for the purpose of circumventing discovery by the plaintiff of the fraud of which said note was one of the consequences. These facts, it is vigorously urged, disclose that the bank had knowledge of the fraudulent character of the several transactions, and that they, reinforced by the fact of the unauthorized pledge of the Stilwell order to the bank as security for Robbins's individual indebtedness to it, are sufficient to destroy the force or impeach the legal integrity of the ultimate finding exonerating the bank from any fraudulent participation in the transactions culminating in the fraud upon the plaintiff.

As to the first of the propositions thus advanced, it is in the first place to be observed, as in effect we have before declared, that there was no legal or moral duty resting upon the bank to inform the plaintiff of the offer of Bowers to take up the Stilwell order as indicated. So far as the findings disclose the circumstances of that transaction, there is nothing therein indicating but that, so far as the bank had any knowledge on the subject *at the time of Bowers's offer and its acceptance by Robbins and the bank,* the plaintiff had been given information of and acquiesced in it. Indeed, so far as it appears to the contrary, at the time of the acceptance of Bowers's offer by Robbins, the bank was justified in assuming that that transaction was known and agreeable to the plaintiff, it having been accepted by his partner. In the second place, the court does not find (see finding 8, *supra*) that the bank communicated to Robbins the offer made by Bowers. What the court does find is, as will be noted, that Bowers made an offer to purchase from the bank the securities, including the Magnesite Company's note, pledged by Stilwell to the bank, and also to give his note for and in lieu of the Stilwell order to Robbins & Breeze, and that the bank and Robbins accepted the offer. Whether, as to the order, the offer was made both to Robbins and the bank or to Robbins alone, cannot be determined from the finding, but it may be assumed that, since the bank was interested in the order as a pledge to secure Rob-

bins's indebtedness to it, the offer as to said order was made to the bank as well as to Robbins, still this fact alone constitutes no evidence of fraud or, if there was fraud at the bottom of Robbins's connection with the offer and its acceptance so far as they concerned the order, that the bank knew of it or had any reason to believe the transaction to be so tainted. It is true that the finding declares that neither Robbins nor the bank at any time communicated to the plaintiff information concerning the offer and the acceptance thereof, but it obviously cannot be concluded from that fact that the bank, at the time of the execution of the transaction or when the offer was made, had knowledge or reason to believe that the plaintiff had not been fully apprised of the proposition by his partner, Robbins.

The statement by the plaintiff that the bank loaned to Robbins the money wherewith he bought his interest in the Bowers note is not supported by the record. The finding as to that circumstance is, as will be perceived, that, while W. H. High, the manager of the bank, performed the physical act of delivering it to the plaintiff, said money was in point of fact loaned to Robbins by his father. But it is urged that said finding must be disregarded for the reason, so it is asserted, that the denial by the bank in its answer that it loaned the money paid by Robbins for the plaintiff's interest in the note is so phrased as to carry with it an admission that the bank did make the loan of said money to Robbins—that is, that said denial involves a negative pregnant. Upon this appeal, however, it being on the judgment-roll alone, that point cannot be of any avail to the plaintiff. Presumptively, the question whether the bank did or did not advance the five hundred dollars, or any part thereof, to Robbins under any circumstances was treated as an issue at the trial and, presumptively, there was sufficient evidence to support the finding upon that issue. (*Peck* v. *Noee,* 154 Cal. 351, 354, [97 Pac. 865].) But, even if it were true that the bank loaned the money to Robbins to be used for the purpose of buying Breeze's interest in the order, it is clear that that circumstance would not tend to show that the bank was thereby guilty of fraud in the transaction, since there is no finding that the bank had knowledge of the purpose for which the money was to be used. But the court did expressly find that the bank had no knowledge at any time prior to the twelfth

day of April, 1907, that the plaintiff had not received from Robbins for his interest in the order a consideration in addition to the said sum of five hundred dollars.

The charge that the bank, after the purpose of the fraud had been accomplished, made false statements to the plaintiff with a view to forestalling and preventing discovery by him of the fraud, is not borne out by the findings. The only finding bearing upon that proposition is finding No. 16, and therein the court finds, as will be observed, that the plaintiff, having for the first time on the sixth day of May, 1907, discovered that the Stilwell order had been paid by Bowers, at once made inquiry of both Robbins and the bank whether or not Robbins knew that Bowers was going to pay the order before the plaintiff had sold and assigned his interest in said order to Robbins, and that both Robbins and the bank denied that Robbins had knowledge of such fact before the time when plaintiff made such assignment. There is no statement to be found in the findings that the bank deliberately made a false statement to the plaintiff as to Robbins's knowledge of Bowers's intention to pay the Stilwell order or his note given in lieu thereof at or before the time that the plaintiff assigned his interest in said order to Robbins. For all that appears to the contrary from the findings, the bank might have in good faith believed that Robbins had no such knowledge at the particular time referred to. Besides, whether the bank did or did not make a false statement with regard to that matter involved a question of evidence, and whether the circumstance, even if true, possessed great or little or no significance in support of the charge of fraud against the bank, constituted a proposition the solution of which was solely with the trial court.

While thus we have taken the pains to show that there is no real inconsistency between the probative and the ultimate facts found by the court, it has been an unnecessary task, since, as before stated, and as is plainly manifest from an examination of the findings, the ultimate fact is not drawn from the findings of probative facts or in any degree dependent upon them.

From the views of the findings above expressed, it results that upon this appeal from the judgment upon the judgment-roll alone, the finding that the bank had no hand or took no part in the fraudulent acts by means of which the plaintiff

was wrongfully deprived of his interest in the Stilwell order can rest upon the presumption, which must be indulged when the appeal, as here, is not supported by a bill of exceptions or statement or other duly authenticated record of the evidence, that there was received into the record evidence sufficient to justify and support it.

There is, however, another point made by the plaintiff of which brief notice only is required. It is contended by him that Robbins held the plaintiff's interest in the Stilwell order as a constructive trustee for the plaintiff, inasmuch as Robbins obtained said interest through fraud; that, this being so, the plaintiff is entitled to follow and recover from the bank the money received into its hands from the sale of the plaintiff's interest in the order, since, so the argument proceeds, the bank, notwithstanding that it might have been a purchaser thereof in good faith and without notice, was not a purchaser for value, inasmuch as it applied the money so obtained to the payment of a pre-existing indebtedness. The contention is that the satisfaction of a pre-existing indebtedness, owing to the vendee, does not constitute a valuable consideration. As upholding that contention, plaintiff cites a number of cases from other jurisdictions. Precisely what the cases referred to hold upon that proposition we need not here pause to inquire, for, whatever may be the rule elsewhere, it is firmly settled by our own decisions that the cancellation of an antecedent debt, due the vendee from the vendor, for the sale of property, does constitute a valuable consideration. (See the following cases: *Payne* v. *Bensley,* 8 Cal. 266, [68 Am. Dec. 318]; *Robinson* v. *Smith,* 14 Cal. 98; *Naglee* v. *Lyman,* 14 Cal. 454; *Frey* v. *Clifford,* 44 Cal. 342; *Davis* v. *Russell,* 52 Cal. 611, [28 Am. Rep. 647]; *Sackett* v. *Johnson,* 54 Cal. 107; *Gassen* v. *Hendrick,* 74 Cal. 444, 446, [16 Pac. 242]; *Foorman* v. *Wallace,* 75 Cal. 552, [17 Pac. 680]; *Russ* v. *Muscupiabe,* 120 Cal. 521, [65 Am. St. Rep. 186, 52 Pac. 995].)

In *Naglee* v. *Lyman,* 14 Cal. 454, the court, expressing its views through Mr. Justice Field, said: "All the authorities, however conflicting in other respects, concur in the rule that where there is change in the legal rights of the parties in relation to the antecedent debt, the creditor taking the collateral security is considered as a holder for value, and the paper not subject to equities existing between the original parties"—that is to say, where the creditor so takes such

security in ignorance of the existence of such equities.

All the other cases above cited to this point confirm and reaffirm the rule as it is thus stated.

Our conclusion is that the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.