[L. A. No. 17752. In Bank.—April 16, 1941.]

W. T. FITZPATRICK, Appellant, v. SUSAN B. UNDER-WOOD, Respondent.

Courtney A. Teel for Appellant.

Stephen Montcleone for Respondent.

CARTER, J.—This is an appeal by plaintiff, a licensed real estate broker, from a judgment for defendant rendered by the court sitting without a jury in an action for commissions claimed to have been earned by plaintiff in connection with the sale of defendant's property. The appeal is on the judgment roll alone, plaintiff contending that the findings do not support the judgment, but on the contrary he is entitled to judgment thereon.

Defendant was the owner of an apartment house known as Underwood Manor, situated in the city of Los Angeles. On February 19, 1938, defendant gave plaintiff an exclusive authorization in writing to sell Underwood Manor for $55,000, "for cash and terms satisfactory" to defendant, and under which plaintiff was to receive a commission of 5 per cent of the selling price. The life of the authorization was six months. It provided in part:

"In consideration of the services of W. T. Fitzpatrick Company, hereinafter called the agent, I hereby list with said agent, exclusively and irrevocably, for a period of six months (6), from date hereof, . . . Underwood Manor, excepting the furniture therein. And I hereby grant said Agent the exclusive and irrevocable right to sell the same within said time for the sum of . . . ($55,000.00) Dollars, for cash and terms satisfactory to me.

"I hereby agree to pay said Agent, as commission . . . (5%) of the selling price.

"In case a sale is made within thirty (30) days after the termination of this listing to parties with whom said agent negotiated during its life and said agent notifies me personally or by mail, in writing, of such negotiation within five days after the termination of this contract, I agree to pay the said agent the commission hereinabove provided."

On April 24, 1938, the plaintiff and defendant, by mutual agreement, modified said authorization by inserting a paragraph therein in writing which provided that if a sale was not made in six months, the authorization would not be exclusive thereafter, but would be authority for an indefinite length of time to sell the property. The authorization, as modified was never revoked. The property was sold by defendant to Isador Shafer on February 7, 1939. Certain events purportedly leading up to the sale appear from the court's findings on probative facts hereinafter quoted. The court, following the pleadings, found the ultimate facts as follows:

"It is not true that after February 19, 1938, or pursuant to the terms of said listing or said employment of plaintiff, said plaintiff produced to or for defendant a purchaser ready or willing or able to purchase said property for cash or terms satisfactory to defendant; it is not true that plaintiff produced a purchaser for defendant's said property ready or willing or able to purchase same for the sum of Fifty-three Thousand Dollars ($53,000.00) or for any sum; it is not true that defendant actually sold said property to any purchaser produced by said plaintiff.

"It is not true that plaintiff has performed all things upon his part to have been performed pursuant to the terms of said agreement (the authorization); it is true that defendant refused to pay plaintiff the sum of Two Thousand Six Hundred Fifty Dollars ($2,650.00) or any part thereof, but the court finds, in that respect, that plaintiff is not entitled to any commission; the court further finds that neither said sum of Two Thousand Six Hundred and Fifty Dollars ($2,650.00) or any part thereof is due or owing plaintiff from said defendant."

The court then proceeded to make the following findings on probative or evidentiary facts.

"On December 19, 1938, plaintiff in the course of his operations as a real estate broker exhibited to one Isador Shafer a number of his apartment house properties, including the aforesaid Underwood Manor; that the first information the said Isador Shafer had that said Underwood Manor was at that time for sale was when he was taken to said property by plaintiff on December 19, 1938; that on December 19, 1938, plaintiff and said Isador Shafer viewed said

property from the street only. That on December 20, 1938, one Otho Reed Hill, now deceased, a salesman in the employ of plaintiff, took said Isador Shafer through Underwood Manor and exhibited same to him; that plaintiff did not inform defendant that said Underwood Manor had been exhibited to said Isador Shafer by said plaintiff or by said Otho Reed Hill and that defendant had no knowledge thereof until a date subsequent to the 7th day of February, 1939, and after she had sold said Underwood Manor to said Isador Shafer. That defendant left Los Angeles on or about December 1, 1938, for a visit in the east, returning to Los Angeles about December 21, 1938; that plaintiff did not know of the defendant's return to Los Angeles until on or about January 4, 1939, when she came to plaintiff's office with said Isador Shafer, whom she had casually met at 7th and Witmer Streets; that on the said 4th day of January, 1939, at plaintiff's office the purchase of said Underwood Manor by defendant Isador Shafer was discussed between plaintiff, defendant and said Isador Shafer, but that the parties left plaintiff's office without having come to any agreement as to either price or terms; that defendant, her son, and said Isador Shafer had gone to the office of plaintiff for the purpose of procuring a document in plaintiff's possession belonging to defendant relative to property of defendant other than said Underwood Manor and that said defendant at that time and place received said document from said plaintiff and receipted to him therefor.

''That said defendant had known said Isador Shafer for approximately twenty years and, prior to the 19th day of December, 1938, said Isador Shafer had been the guest of defendant at said Underwood Manor on several occasions and knew, prior to said 19th day of December, 1938, that defendant was the owner thereof, and, prior to the 19th day of February, 1938, said Isador Shafer had stated to defendant that if he should ever become financially able, he desired to purchase said Underwood Manor.

''That following said 4th day of January, 1939, and for a period of approximately one month, defendant and said Isador Shafer carried on discussions in reference to the sale of Underwood Manor, and, on or about the 7th day of February, 1939, through defendant's own independent efforts and without any assistance from said plaintiff, defendant

arrived at satisfactory terms of sale and went into escrow with said Isador Shafer for the sale of said Underwood Manor at a price of $51,000.00 for the real property, plus $2,000.00 for defendant's equity in the furniture and furnishings within said Underwood Manor, and that said Underwood Manor was thereupon sold for the above consideration.

"That shortly subsequent to the said January 4, 1939, and to wit: within one or two days thereafter, plaintiff discussed the proposed sale with Isador Shafer over the telephone, and was advised by the said Isador Shafer that defendant had proposed to said Shafer that she, personally, sell her property direct to said Isador Shafer with the stated purpose of avoiding the payment of a broker's commission, so that both buyer and seller might benefit by this item of saving. That plaintiff was then and there informed by said Isador Shafer that defendant and said Isador Shafer intended to conclude said negotiations without plaintiff's further services. That plaintiff then and there advised said Isador Shafer to continue his negotiations with the owner and that if they got together on terms satisfactory each to the other and concluded a deal resulting in the sale of said property by defendant to said Isador Shafer that plaintiff would try to protect himself in the matter of his commission. That plaintiff thereafter stood by and made no further efforts to effect or conclude any sale of said Underwood Manor, and performed no further services; that said negotiations continued between defendant and said Isador Shafer throughout the month of January."

Thereafter the court found that at all times after January 4, 1939, until the sale was made by defendant on February 7, 1939, plaintiff knew defendant was making independent efforts to sell the property, but did not communicate with defendant in any fashion, and during that time advised the purchaser to deal directly with defendant; and that "no services were rendered by said plaintiff to defendant which were the procuring or inducing cause for the purchase of said Underwood Manor by said Isador Shafer." Pursuant to the findings the court rendered judgment for defendant. Plaintiff bases his appeal on the ground that the above-quoted findings on the probative facts are controlling over the findings on the ultimate facts, and that on the former he is entitled to judgment; he contends that under the circum-

stances the findings on the ultimate facts were merely conclusions of law.

■ It is the general rule that it is the duty of the trial court to find ultimate rather than probative or evidentiary facts, and that findings of probative facts will not control, limit or modify the finding of ultimate facts, or tend to establish that the ultimate facts were found against the evidence, unless the ultimate findings are necessarily based on the probative findings and are completely overcome. (*Perry* v. *Quackenbush,* 105 Cal. 299 [38 Pac. 740]; *Commercial Bank of Madera* v. *Redfield,* 122 Cal. 405 [55 Pac. 160, 772]; *Brown* v. *Mutual etc. Life Assn.,* 137 Cal. 278 [70 Pac. 187]; *Enterprise Foundry Co.* v. *Polly,* 73 Cal. App. 225 [238 Pac. 722]; *Hammond Lumber Co.* v. *Barth Inv. Corp.,* 202 Cal. 606 [262 Pac. 31].) This rule, as applied where the appeal is on the judgment roll alone and the ultimate findings precede the probative findings, cover all the issues in the pleadings, and are sufficient in themselves to support the judgment, is stated in *Enterprise Foundry Co.* v. *Polly, supra,* at page 227 as follows:

"By findings 1, 2 and 3 the ultimate fact is determined that the defendant was, prior to the time of the trial, at the time of the trial and at the date of making the findings and entering judgment, the owner of the gasoline engine in controversy. By findings 4 and 5 certain probative facts, which appeared in the case, are set forth and it is on the ground that these findings, in setting forth probative facts, do not set forth sufficient to establish payment or agency.

"The law is well settled in this state that *where ultimate facts are found, which are sufficient in themselves to support the judgment entered,* the mere fact that the trial court also makes findings in which probative facts are incorporated, which indicate that the ultimate facts are not sufficiently proven, and an appeal is made upon the judgment-roll alone, the probative facts set forth in the findings must be disregarded. In *Gill* v. *Driver,* 90 Cal. 72 [27 Pac. 64], in considering this very question, the supreme court held as follows: 'Ultimate facts were found which do support the judgment; and they are not questioned, nor could they be, without bringing up the evidence in a statement or bill of exceptions. The rule has long been settled that "when the ultimate fact is found, no finding of probative facts, which

may tend to establish that the ultimate fact was found against the evidence, can overcome the finding of the ultimate fact." ' (Citing *Smith* v. *Acker*, 52 Cal. 217; *Pio Pico* v. *Cuyas*, 47 Cal. 174.)

"In the case of *Breeze* v. *International Banking Corp.*, 25 Cal. App. 437 [143 Pac. 1066], this court, speaking through Justice Hart, thus decides the same question: 'Where the trial court makes both probative and ultimate findings and the one set is inconsistent with the other, the general rule is as it is declared in the case of *Perry* v. *Quackenbush*, 105 Cal. 299 [38 Pac. 740], as follows: "Findings of probative facts will not, in general, control, limit, or modify the findings of the ultimate fact. The province of the trial court is to find the ultimate facts, and not probative facts. If, from a consideration of the probative facts, this court should determine that they did not justify the finding of the ultimate fact, it would determine that the evidence did not justify the decision. This, it has been repeatedly held, cannot be done in this mode." '

"And further quoting from the case of *Pico* v. *Cuyas*, *supra*, it is there said: 'It has been repeatedly held that a finding of the court cannot be impeached upon the ground that it is contrary to the evidence otherwise than by a motion for a new trial and statement of evidence upon the motion. We can consider upon appeal from the judgment only the ultimate facts found by the court, and not the probative facts which have no proper place in the findings,' citing *Smith* v. *Acker*, 52 Cal. 217; *Frazier* v. *Crowell*, 52 Cal. 399; *Gill* v. *Driver*, 90 Cal. 72 [27 Pac. 64]; *Rankin* v. *Newman*, 107 Cal. 602 [40 Pac. 1024, 41 Pac. 304]; *Commercial Bank* v. *Redfield*, 122 Cal. 405 [55 Pac. 160, 772]; *Brown* v. *Mutual Reserve Fund Life Assn.*, 137 Cal. 278 [70 Pac. 187]." (See, also, *Lamanet* v. *Lamanet*, 18 Cal. App. (2d) 402 [63 Pac. (2d) 1195]; *Comer* v. *Los Angeles Ry. Corp.*, 95 Cal. App. 545, 546 [272 Pac. 1100].)

In the case at bar the ultimate findings standing alone found adversely to every allegation of the complaint, and entirely negatived plaintiff's claims that he had procured a purchaser for defendant's property and was entitled to a commission as the result of the sale thereof. Obviously, those findings without regard to the probative findings are sufficient to support the judgment. Certainly standing alone they are

not conclusions of law. Under those circumstances we must necessarily conclude that those ultimate findings alone disposed of every issue in the case. Plaintiff is in no position to claim that those findings are legal conclusions when they are identical with the allegations in his complaint which were necessary for him to state a cause of action. There is nothing in the findings which indicate that the ultimate findings were conclusions based solely, exclusively or necessarily or at all on the probative findings, nor that the probative findings recited all of the evidence before the court. Plaintiff claims that it was at his "insistence" that the probative findings were made. That being true it is apparent that the court had decided the case and made its ultimate findings before and without regard to the probative findings. If a losing party may persuade a court to find on all the evidence as well as on the ultimate facts, and then obtain a reversal of the judgment merely because some of the evidence was omitted or there is some inconsistency in the ultimate and evidentiary findings, then the salutary rule that the only proper findings are those on ultimate facts will be defeated and there will no longer be any necessity for a transcript of the testimony on appeal. Nevertheless, we will examine plaintiff's contentions in respect to the effect of the probative findings.

Plaintiff takes the position that he was the procuring cause of the sale of the property to Shafer and therefore he is entitled to the commission. The probative findings in that respect are that on December 19, 1938, he exhibited the property to Shafer and that was the first time Shafer knew that the property was for sale at that particular time, and his salesman showed Shafer through the building on December 20, 1938; that thereafter, on January 4, 1939, defendant went to plaintiff's office with Shafer, whom defendant had casually met on the street, to obtain from plaintiff a document dealing with property not here involved, and at that time and place Shafer, defendant and plaintiff discussed the purchase of Underwood Manor but no agreement was made; that thereafter on February 7, 1939, defendant sold the property to Shafer, plaintiff having no part in any of the negotiations after January 4, 1939; *that plaintiff did not advise defendant and defendant did not know that plaintiff had exhibited the property to Shafer at any time until after defendant sold it to Shafer on February 7, 1939.* In the face

of that positive finding and the ultimate findings above quoted it cannot be inferred that plaintiff informed defendant of the exhibition of the property to Shafer at the time of the conversation on January 4, 1939, because from all that appears the conversation may have been chiefly between Shafer and defendant, and Shafer may have asked defendant if the property was for sale and opened negotiations with defendant for the purchase of the property at that time. Any reasonable inferences that may be drawn from these findings can be said to give support to the judgment rather than defeat it. (*Chow* v. *City of Santa Barbara*, 217 Cal. 673 [22 Pac. (2d) 5].) However, it appears from the probative findings that defendant had known Shafer for twenty years, and he knew she owned Underwood Manor, and Shafer had told defendant he wished to buy it when able. This reasonably contains the inference that defendant was willing to sell to Shafer and Shafer knew it. The court found that the sale was "through defendant's own independent efforts and without any assistance from said plaintiff"; that one or two days after January 4, 1939, Shafer told plaintiff that defendant had proposed to him that the sale be conducted without plaintiff to avoid the commission; and Shafer told plaintiff that he and defendant intended to proceed with the deal without plaintiff's assistance, to which plaintiff replied that Shafer should proceed and he would protect his commission; that plaintiff knew defendant was making independent effort to sell the property after January 4, 1939, but plaintiff did not communicate with defendant in any fashion; that no services were performed by plaintiff which were the procuring or inducing cause of the purchase by Shafer. Plaintiff claims that he had earned his commission on the basis of what had occurred up to and including January 4, 1939. Keeping in mind that the ultimate findings are all contrary to plaintiff's case and that all intendments are in defendant's favor in support of the judgment, the most that may be fairly deduced from the probative findings is that plaintiff obtained an authorization from defendant to sell the property, informed Shafer that it was for sale and exhibited it to him; that the purchase of the property by Shafer was discussed by plaintiff, defendant and Shafer, but what particular deal with relation thereto or of what the discussion consisted is not known; that defendant and Shafer were never brought together on

any deal by any introduction of Shafer to defendant, or by any communication by plaintiff to defendant; and that Shafer and defendant consummated a transaction as the result of defendant's independent efforts more than a month after either Shafer or defendant had seen or communicated with plaintiff for a price of $51,000 for the building, $4,000 less than the listed price. We do not believe that under such circumstances the plaintiff became entitled to a commission. The case of *Hill* v. *Knight,* 209 Cal. 14 [285 Pac. 691], is persuasive authority for this conclusion. There the broker had a nonexclusive listing as in the case at bar. Thereafter, there was no communication between the broker and the owner with respect to a purchaser having been found. The broker contacted one Deming in regard to the purchase of the property and discussed the matter with him. The negotiations culminated in an interview in the broker's office with Deming in regard to the purchase of the property but no sale was effected. Five days later Deming purchased the property from the owner. Plaintiff broker secured a judgment for a commission which was reversed by this court. Although the facts in that case are not identical, there is sufficient similarity to the facts of this case to make the rule applied there applicable here. Numerous cases bearing on the proposition here involved are there discussed and the authorities relied upon by defendant in the case at bar are there distinguished. This court in that case said:

"The plaintiff took no means and made no effort to inform the defendants that he had a prospective customer or that he had even mentioned to Richard Deming that the ranch was for sale. *The mere fact that the plaintiff called the attention of the property to Richard Deming is not sufficient to enable him to prevail in this action.* As said in *Naylor* v. *Ashton,* 20 Cal. App. 544 [130 Pac. 181]: 'It must further appear that the broker had performed the duty assumed by him within the time limit in his contract, or within such extension of time as may have been granted by his employer. If he failed to do that, he is not entitled to the commissions, even though he made efforts to sell property, and first called to it the attention of the party who subsequently made the purchase, unless the delay was caused by the negligence, fault or fraud of the owner.' (Citing cases.) To the same effect is the case of *Cone* v. *Keil,* 18 Cal. App. 675 [124 Pac. 548],

where it is said: 'Merely putting a prospective purchaser on the track of property which is on the market will not suffice to entitle the broker to the commission contracted for, and even though a broker opens negotiations for the sale of the property, he will not be entitled to a commission if he finally fails in his effort, without fault or interference of the owner, to induce a prospective purchaser to buy or make an offer to buy, notwithstanding that the owner may subsequently, either personally or through the instrumentality of other brokers, sell the same property to the same individual, at the price and upon the terms which the property was originally offered for sale. . . .

" 'In view of the fact that the plaintiff's own testimony shows that he did nothing more than has been held insufficient in the case of *Cone* v. *Keil, supra,* which case was affirmed in *McCoy* v. *Zahn Corp., supra;* that he did not consummate any sale of the property referred to in this action; that he did not have any exclusive agency; that he knew the defendants claimed the right to sell the property themselves; that there was no communication between the plaintiff and the defendants for more than two months after the receipt of the letter under which the plaintiff claimed the right to act; that the plaintiff made no effort to inform the defendants, or any of them, that he had endeavored to interest Richard Deming, Jr., in the purchase of the defendants' property; that the defendants made the sale of the property without any knowledge that the plaintiff had called it to the attention of the purchaser; that the record shows that the defendants acted in entire good faith without any subterfuge, without any attempt to make a sale of the property so as to deprive the plaintiff of commissions; that the record shows no fraud or delay on the part of the defendants; and in further view of the cases which we have cited applicable to the facts involved in this action, we find no escape from the conclusion that the defendants' motion for a nonsuit should have been granted. . . . ' "

■ Bad faith on defendant's part does not necessarily follow from the probative finding that one or two days after January 4, 1939, Shafer told plaintiff that defendant said that she intended to deal directly with Shafer and avoid a commission, because that was a finding on an isolated item of evidence that did not purport to be all the evidence on the

subject, and in view of the ultimate findings, it is not unreasonable to believe that there may have been evidence directly to the contrary on that issue such as defendant's own testimony. It is not established that plaintiff was the efficient cause of bringing about the sale. He did not bring Shafer and defendant together. True he informed Shafer the property was for sale and exhibited it to him, but when Shafer and defendant went to plaintiff's office they had met casually on the street and not through any effort of or the instrumentality of plaintiff. What transpired at that meeting before they went to plaintiff's office does not appear. It may have been that at that time defendant asked Shafer if he would buy. Nothing was accomplished at the meeting in plaintiff's office and the mere fact that there was a discussion concerning a purchase by Shafer does not necessarily show any activity on plaintiff's part to bring about the sale. It cannot be said that plaintiff did anything which brought the parties together. Defendant and Shafer had been acquainted for many years and defendant knew that Shafer desired to purchase the property whenever he was financially able.

We are not unmindful of the rule that where a broker procures a purchaser ready, willing and able to make the purchase, he is not deprived of the right to a commission merely because the owner thereafter completes the transaction without the assistance of the broker unless the broker's authorization provides otherwise. (*Hill* v. *McCoy*, 1 Cal. App. 159 [81 Pac. 1015].) An agent may recover damages for the breach of an exclusive agency contract by the principal even though he has not produced a purchaser ready, willing and able to purchase, where the breach by the principal consists of preventing the agent from selling the property by selling it himself before the agency contract has expired. (*Fleming* v. *Dolfin*, 214 Cal. 269 [4 Pac. (2d) 776, 78 A. L. R. 585].) In the instant case the broker not having the exclusive right to sell the property, the owner had the right to sell it, and a commission is payable only if the broker was the procuring cause of the sale. Under the circumstances here presented and particularly in view of the probative facts found by the trial court that plaintiff did not do anything in connection with the sale of the property except to call it to Shafer's attention and to exhibit it to him; that plaintiff did not notify defendant that he had exhibited the property to Shafer even

after the latter had advised plaintiff that he was negotiating with defendant for the purchase of the property and that defendant had advised Shafer that she did not intend to pay plaintiff a commission in the event of such sale, we cannot say that plaintiff was the procuring cause of the sale or produced a purchaser ready, willing and able to purchase the property, or perform the terms of his agency agreement to the extent that he was entitled to receive a commission from the defendant for the sale of the property. In our opinion the findings are sufficient to support the judgment, and the judgment is affirmed.

Curtis, J., Shenk, J., Edmonds, J., Traynor, J., and Gibson, C. J., concurred.

Appellant's petition for a rehearing was denied May 15, 1941.