[Sac. No. 1115.   In Bank.—June 2, 1904.]

## K. J. ROSASCO, Executrix, etc., Appellant, v. COUNTY OF TUOLUMNE, Respondent. .

TAXATION — ASSESSMENT OF ANIMALS — STATUTE NOT REPEALED.—The statute of March 30, 1872, "Concerning the Assessment of Animals," is not in conflict with the provisions of the Political Code respecting the assessment of personal property.

ID.—SITUS OF PERSONAL PROPERTY.—PLACE OF TEMPORARY SOJOURN.—The provisions of the Political Code and of the constitution providing for the assessment of personal property in the county in which it is situated has reference to its permanent *situs*, as distinguished from the place of temporary sojourn, or transit.

ID.—ASSESSMENT OF GRAZING STOCK.—Regardless of whether grazing stock were assessed under the act of 1872 or under the Political Code and constitution as personal property, they were only assessable in a county other than that of the residence of the owner when having a permanent *situs* therein. If grazing stock were permanently kept at the residence of the owner, and were temporarily grazing in another county on the first Monday in March, at noon, they were properly assessed at the owner's place of residence.

ID.—POWER OF ASSESSOR—ASSESSMENT OF PROPERTY NOT LISTED.—The assessor has power to assess property not listed by the taxpayer which was properly assessable within the county, without serving a subpœna, and without an order of the supervisors.

APPEAL from a judgment of the Superior Court of Tuolumne County.   G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. B. Curtin, for Appellant.

F. P. Otis, for Respondent.

HENSHAW, J.—This action was brought to recover from the defendant the sum of sixty-nine dollars, on account of taxes paid by plaintiff under protest for certain cattle. The appeal is from the judgment upon the judgment-roll alone. The facts as set forth in the findings are therefore not in dispute. The court found that the estate of Rosasco, of which plaintiff is the executrix, owned about two thousand acres of land in Tuolumne County and about five hundred and eighty-nine

acres of land in Stanislaus County, and upon the first Monday in March, 1901, was the owner of about three hundred and six head of stock cattle. The lands in Tuolumne constitute the "Home Ranch," and for several months prior to the second day of March, 1901, all of the cattle had been pastured upon this ranch. On the second day of March the plaintiff caused two hundred and thirty head of cattle to be driven from the "Home Ranch" in Tuolumne County to the land in Stanislaus County, and two hundred and thirty head of cattle were at said latter ranch at twelve o'clock, noon, on the first Monday of March, 1901. About the first day of April the executrix caused two hundred head, and shortly afterwards the remainder of the cattle, to be driven back to the "Home Ranch" in Tuolumne County, after which they were pastured upon the lands of the estate in that county. The residence of the executrix is, and that of her testate in his lifetime was, the county of Tuolumne, and the court expressly finds: "That said 230 head of stock cattle were by the executrix of said estate driven from the county of Tuolumne, state of California, into the county of Stanislaus, state of California, on the first day of March, 1901, for the purpose of temporarily pasturing the same in said Stanislaus County." The court further finds that the executrix in making her sworn statement on behalf of the estate for the assessor of Tuolumne County omitted to enter the two hundred and thirty head of stock "so driven from the county of Tuolumne aforesaid into the county of Stanislaus aforesaid, for the purpose of temporarily pasturing the same in said Stanislaus County." The assessor of the county of Tuolumne thereafter, without subpœna served upon plaintiff, and without order of the board of supervisors of the county, added to the sworn statement so made and given him by the executrix the two hundred and thirty head of cattle so omitted, and assessed the same against the estate of plaintiff's testator.

The appellant contends under these facts,—1. That the cattle were improperly assessed in the county of Tuolumne, because their "situation" upon the noon of the first Monday in March was the county of Stanislaus; and 2. That the assessor had no power to add these cattle to the verified list furnished in the statement of the executrix.

1. The assessment of these animals was proper under the

act of March 30, 1872, "Concerning the Assessment of Animals." (Stats. 1871-1872, p. 754.) But to this appellant makes reply that that act has been repealed by the provisions of the Political Code. As the act concerns the revenue of the state, it undoubtedly comes within the purview of section 3891 of the Political Code, which provides that its revenue laws are to be construed as though the Political Code had been passed and approved on the last day of the session; but still the effect of this is not to invalidate or destroy the earlier act, unless a repugnancy between the provisions of that act and those of the Political Code touching the revenues of the state is made to appear. Appellant contends that this is so made to appear by virtue of section 3628 of the Political Code as amended in 1880, and in particular that portion of it declaring that "all other taxable property shall be assessed in the county, city, or city and county, town, township, or district in which it is situated." Substantially the same provision is to be found in the constitution of 1879. (Art. XIII, sec. 10.) Upon this language it is argued that the actual location of property upon noon of the first Monday of March of each year absolutely fixes its *situs* for purposes of taxation. With this contention, however, we cannot agree. It is always recognized that in the assessment of goods in transit, of migrating herds, and the rolling-stock and vessels of transportation companies the permanent *situs,* as distinguished from the place of temporary sojourn, is of controlling force. It is in recognition of this that the rolling-stock of railroads operating in more than one county in the state is not made the subject of assessment by the local assessors of the various counties, and it is in further recognition of this that the act of 1872 provides that stock "temporarily grazed" in one county shall nevertheless be assessed in and for the county where the owner resides.

But aside from the provisions of this act, and eliminating it entirely from consideration, still the assessment in this case was justified under section 3628 of the Political Code, and the constitutional provision above cited. The language is, that all other taxable property shall be assessed in the county in which it is situated. This, as all of the authorities go to show, has reference to its permanent situation. Thus, if cattle are kept permanently in one county, they are to be assessed in such county, irrespective of the residence of the owner. But if,

upon the other hand, cattle are temporarily in a county upon the first Monday of March, at noon, they are to be assessed in the county where they are permanently kept. This is in accord with our own decisions and with those of sister states. Thus, in *People* v. *Holladay,* 25 Cal. 301, no contention arose as to the residence of the owner of the cattle, whether it was in Solano County or Alameda County, nor is it made to appear how long the cattle were in Solano County prior to the first Monday in March. For aught that appears to the contrary, they were permanently kept in Solano County, and were therefore properly assessed there. And notwithstanding they had been subsequently removed to Alameda County when the district attorney of Solano County began suit to collect the taxes, this court very properly held that the Solano County assessment, under the indicated circumstances, was proper. *People* v. *Niles,* 35 Cal. 282, involved the question of taxes on a sailing-vessel. In its discussion this court said by way of illustration: "As, for example, where the non-resident has cattle and sheep which he keeps or herds or pastures in San Mateo County at the time named in the statute; in which case they are taxable in San Mateo County." This language must be construed as having reference to the permanent herding or pasturing, and thus comes within the rule as above enunciated, that regardless of the residence of the owner personal property permanently kept or maintained in one county is there to be assessed. In the case last quoted, in recognition of the distinction between the permanent *situs* of personal property and its transitory or temporary resting-place, this court said: "To authorize the taxing of personal property in any other county than that in which the owner resides, it must appear that the property is being to some extent kept or maintained in such county and not there casually or *in transitu,* or temporarily in ordinary course of business or commerce." In the *City of Oakland* v. *Whipple,* 39 Cal. 112, a steamboat case, this court say: "In *People* v. *Niles* we held that personal property thus transiently within the county could not be there taxed. . . . But in the absence of an express finding on that point, we must presume the implied findings to have been such as were necessary to sustain the judgment; and that the court found the boat was not *in transitu,* or there for a mere temporary purpose, and

CXLIII. Cal.—28

was, consequently, subject to taxation, and rightfully taxed." In the case at bar the finding is explicit that the cattle were in Stanislaus County temporarily. It therefore comes strictly within the rule and reason of the above cases from our own court. In *Barnes* v. *Woodbury,* 17 Nev. 383, the plaintiff owned lands in Eureka County, where his cattle were cared for and his business conducted. He allowed them to graze temporarily upon the public domain in White Pine County, and they were assessed in that county. He successfully attacked the assessment, the supreme court of Nevada holding that, as his home ranch was in Eureka County, for the purpose of herding, caring for, and managing his cattle, "they were not abiding within, nor did they belong in, White Pine County in such a sense as to become incorporated with the wealth of that county, or to make them a part of its personal property." In *Ford* v. *McGregor,* 20 Nev. 446, it is again declared that livestock driven from the home ranch of the owners into another county, to be herded therein temporarily and then returned to the ranch in the home county, is not assessable for taxes in the former county. In *Whitmore* v. *McGregor,* 20 Nev. 451, the supreme court of Nevada applied the same principle to teamsters engaged in teaming and freighting in Eureka County, who were wont, at the close of the teaming season, to send their horses and mules into Nye County to be fed and cared for until the reopening of the teaming season. It was held that they were not properly assessable in Nye County, but were assessable in the county of Eureka. In *State* v. *Shaw,* 21 Nev. 222, the supreme court of Nevada again held that cattle born, bred, branded, and kept in Nye County have their habitat and are assessable there, although they wander into other counties, and although the owner's home ranch is in Eureka County, where occasionally some of the cattle are taken to be fattened. In *Mayor of Mobile* v. *Baldwin,* 27 Ala. 71,[1] the question turned upon the assessment of a steamboat by the municipality, and the court there say: "It is, however, the actual *situs* of the boat, permanent or temporary, which it is most material to consider in determining the liability. If the boat had such *situs* within the city, under the views of the charter we have ex-

[1] 29 Am. Rep. 712.

pressed, it is the subject of municipal taxation. If it had not, and its presence in the city was merely transitory, in the course of its employment, it was not liable to such taxation."

It is concluded upon this proposition, therefore, that grazing stock are assessable, without regard to the residence of the owner, in the county where they are permanently reared and kept, and, as in this case, it is distinctly found that they were permanently kept in the county of Tuolumne, and were in the county of Stanislaus temporarily and for the purpose of temporary pasturage, it follows that they were properly assessed in the former county.

2. In support of the asserted illegality of the act of the assessor, appellant relies upon the case of *Weyse* v. *Crawford*, 85 Cal. 196, but that decision has received construction in *People* v. *National Bank*, 123 Cal. 53,[1] where it is said: "In respect to this, reliance is placed upon *Weyse* v. *Crawford*, 85 Cal. 196, which, it is contended, holds that the assessor cannot add to a list returned by a taxpayer, unless he has been so subpœnaed and examined. I do not so understand that opinion. It holds that the assessor cannot make an assessment which shall not be revisable by the board of equalization unless the taxpayer has refused to make out his list under oath or has refused to comply with some other requirement of the law. . . . Unless there has been some dereliction on the part of the taxpayer, unless he has failed to render the assistance to the assessor which the law requires him to render, he cannot be subjected to the penalty of a non-revisable assessment. . . . This is not a ruling that the assessor cannot assess property not found in the verified lists made by a property-owner." So understood, no difficulty is presented by the assessment here under consideration, and the opposite to appellant's contention has been decided in *San Francisco* v. *La Société etc.*, 131 Cal. 612, and *Security Savings Bank* v. *San Francisco*, 132 Cal. 599.

For the foregoing reasons the judgment appealed from is affirmed.

McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., Lorigan, J., and Beatty, C. J., concurred.

---

[1] 69 Am. St. Rep. 32, and note.