[Civ. No. 13879.   Second Dist., Div. Three.   June 23, 1943.]

JAMES E. SAYLES, Respondent, v. COUNTY OF LOS ANGELES, Appellant.

J. H. O'Connor, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellant.

Arch E. Ekdale and J. F. Harvey for Respondent.

SHAW, J. pro tem.—The defendant county of Los Angeles appeals from a judgment for plaintiff in an action to recover taxes paid under protest. The appeal is presented on the judgment roll alone. The facts herein stated appear from the findings. At all material times, the plaintiff here was the owner of an ocean-going tug named "Eskimo" and was a resident of Ketchikan, in the Territory of Alaska, and the tug was registered at the same place. On November 14, 1938, plaintiff chartered this tug to Philip R. Park, Inc. (referred to herein as "Park"), a corporation, whose principal place of business was in the county of Los Angeles. By the terms of the charter plaintiff was required to maintain the tug in good working order, provide it with fuel, lubrication, etc., and furnish a captain and engineer to operate it, but the tug was to be under the direction, supervision and control of Park. This charter covered the period from November 14, 1938, to February 1, 1940, and on the latter date was renewed for one year, with the option of further renewal for five years. This option was not exercised, and the tug returned to Ketchikan.

During the life of the charter, Park used the tug to tow an ocean-going kelp-cutting barge owned by it between the Port of San Pedro, in the county of Los Angeles, and "kelp beds lying off the California coast" `and to cut or harvest kelp therefrom, for which Park had a license from the State of California. These kelp beds "were located immediately adjacent to San Nicholas Island, Santa Cruz Island, Point Dume, and San Mateo Point." From this it is to be inferred, but was not found, that they were within three miles of the coast, and hence within the State of California. Ten or twelve trips between San Pedro and the kelp beds were made each month. "The average time consumed therein was 24 hours in port and 36 to 40 hours at sea."

While the tug was so employed, on July 1, 1940, it was assessed by defendant county for taxes. Plaintiff refused to pay the taxes and demanded that Park do so. When Park also refused to pay, plaintiff paid the taxes under protest, and by the judgment herein has been awarded their recovery.

The parties here are substantially agreed on the governing rule of law relating to the taxability of the tug in the county of Los Angeles, but they disagree on its application to the facts above stated. ■ The rule applicable to tangible personal property generally was thus stated in *Brock & Co.* v. *Board of Supervisors*, (1937) 8 Cal.2d 286, 289, 290 [65 P.2d 791, 110 A.L.R. 700] : "The doctrine *mobilia sequuntur personam* is no longer a conclusive guide as to the situs for tax purposes of tangible personalty, and such property now, by statute or otherwise, is taxable in the locality where it has an established permanent situs, irrespective of the owner's domicile. [Citing authorities.] . . . the requirement of permanency must attach before tangible property which has been removed from the domicile of the owner will attain a situs elsewhere." ■ The application of this rule to the special case of ocean-going vessels was considered in *Olson* v. *San Francisco*, (1905) 148 Cal. 80, 83-84 [82 P. 850, 113 Am.St.Rep. 191, 7 Ann.Cas. 443, 2 L.R.A. N.S. 197], where the court said : "It appears to be thoroughly settled that the legal *situs* of such a vessel for the purpose of taxation is in her home port, and that her physical absence therefrom cuts no figure. For such purpose she is deemed to be at such place, and is taxable only within the state in which such place is situated. [Citing authorities.] It is held that

such a vessel may, by being indefinitely and exclusively employed within the waters of another state, acquire an actual *situs* therein which will permit of her taxation there [citing cases]; but this conclusion is founded on the proposition that by actual use the vessel has acquired a permanent actual *situs* in another state and is no longer actually engaged in foreign or interstate commerce, except within the limits of such state.'' The same rule was applied to vessels in *California etc. Co.* v. *San Francisco,* (1907) 150 Cal. 145 [88 P. 704], and *San Francisco* v. *Talbot,* (1883) 63 Cal. 485, 488. It is to be noted that, by the United States shipping laws, as they stood at the time of these decisions, the home port of a vessel was that at or nearest which the owner, or managing owner, resided. (See *Ayer & Lord Tie Co.* v. *Kentucky,* (1906) 202 U.S. 409, 419 [26 S.Ct. 679, 50 L.Ed. 1082, 1086]; sec. 17, Title 46, U.S.C.A.)

Dealing with this subject, the United States Supreme Court, in *Southern Pacific Co.* v. *Kentucky ex rel. Alexander,* (1911) 222 U.S. 63, 67, 68 [32 S.Ct. 13, 56 L.Ed. 96, 98], said: ''The owner has no power to give his vessel a taxable situs by the arbitrary selection of a home port which is neither his domicil nor the domicil of actual situs. . . . Since, therefore, an artificial situs for purposes of taxation is not acquired by enrolment nor by the marking of a name upon the stern, the taxable situs must be that of the domicil of the owner, since that is the situs assigned to tangibles where an actual situs has not been acquired elsewhere . . . if the owner, by his own act, gives to such property a permanent location elsewhere, the situs of the domicil must yield to the actual situs and resulting dominion of another government.'' Accordingly, the court held that ocean-going steamers owned by a Kentucky corporation, but enrolled at the port of New York and regularly engaged in trips between that port and New Orleans exclusively, as well as others plying between New York and several other ports, were taxable in the State of Kentucky, which was the owner's domicile.

In *Ayer & Lord Tie Co.* v. *Kentucky, supra,* (1906) 202 U.S. 409, 423 [26 S.Ct. 679, 50 L.Ed. 1082, 1087], the court thus stated the rule: '' . . . the power of taxation of vessels depends either upon the actual domicil of the owner or the

permanent situs of the property within the taxing jurisdiction.''

■ The question before us covers not only the possible tax situs of the tug in California, but also the identity of the particular county where such situs would be; for substantially the same rule that governs the taxation of tangible personal property as between different states or countries, also prevails as between different counties in this state. (*Rosasco* v. *County of Tuolumne*, (1904) 143 Cal. 430, 433 [77 P. 148]; *City of Oakland* v. *Whipple*, (1870) 39 Cal. 112, 115; *People* v. *Niles*, (1868) 35 Cal. 282, 287.)

■ The question of the situs of personal property for taxation is, in the first instance, one of fact, to be resolved on a consideration of all the circumstances bearing upon the matter. (*Atlantic Maritime Co.* v. *City of Gloucester*, (1917) 228 Mass. 519, 527 [117 N.E. 924, 926].) The facts above stated, which appear in the findings, include several such circumstances and are all evidentiary in nature. From them the final conclusion as to the situs of the tug for taxation, the ultimate fact, must be drawn. As stated in the case just cited, this may be, at times, a mixed question of law and fact.

■ But the parties here are in no position to claim that it is anything other than an ultimate fact. Plaintiff, in his complaint, after setting forth some evidentiary matters, but not all of those above stated, alleged, ''that said vessel, according to plaintiff's information and belief has never acquired a situs for tax purposes in California; that the situs for tax purposes is Ketchikan, Alaska.'' In its answer defendant county denied some of the evidentiary matters alleged by plaintiff, and alleged affirmatively ''that at or about November 14, 1938 said tug 'ESKIMO' acquired, and ever since and at all times in said complaint mentioned has had, a situs for tax purposes in the State of California and in the County of Los Angeles, and, ever since said date and at all times in said complaint mentioned, has not had any situs for tax purposes at Ketchikan, Alaska, or outside of the City of Los Angeles and County of Los Angeles.'' Having thus agreed that an allegation of the ''situs for tax purposes'' is one of ultimate fact, the parties cannot now disown it as such. (*Fitzpatrick* v. *Underwood*, (1941) 17 Cal. 2d 722, 729 [112 P.2d 3].) ■ Looking for such ultimate fact in the findings, we discover it, not among the

propositions of fact there stated, but in a conclusion of law which declares: "That at all the times herein mentioned the plaintiff's said tug 'ESKIMO' had, and now has, no tax situs anywhere except at Ketchikan, Alaska." Under the circumstances, this declaration is to be regarded as a finding of fact, and it does not lose its character as such because it is misplaced among the conclusions of law. (24 Cal.Jur. 961 and cases cited; *Linberg* v. *Stanto,* (1931) 211 Cal. 771, 776 [297 P. 9, 75 A.L.R. 555]; *Gossman* v. *Gossman,* (1942) 52 Cal.App.2d 184, 193 [126 P.2d 178].)

■ There remains for our consideration the question whether this finding, which purports to be a conclusion from the evidentiary facts already stated, is overcome thereby. "It is the general rule that . . . findings of probative facts will not control, limit or modify the finding of ultimate facts, or tend to establish that the ultimate facts were found against the evidence, unless the ultimate findings are necessarily based on the probative findings and are completely overcome." (*Fitzpatrick* v. *Underwood, supra,* (1941) 17 Cal. 2d 722, 727; to same effect, see *Loud* v. *Luse,* (1931) 214 Cal. 10, 12 [3 P.2d 542]; *Hammond Lumber Co.* v. *Barth Investment Corp.,* (1927) 202 Cal. 606, 609 [262 P. 31].) But " . . . an ultimate finding of fact which is drawn as a conclusion from the probative facts previously found cannot stand if the specific facts upon which it is based do not support it." (*Lee* v. *Hibernia etc. Soc.,* (1918) 177 Cal. 656, 659 [171 P. 677]; to same effect see cases there cited, and *Falk* v. *Falk,* (1941) 48 Cal.App.2d 762, 769, 770 [120 P.2d 714].)

■ We are of the opinion that the evidentiary facts set forth in the findings and above stated do support the finding above quoted that the tug had no tax status elsewhere than at Ketchikan. It may be that a contrary finding also could be supported by these facts; but if so, we have only the familiar situation where the evidence is conflicting, and the trial court's decision upon it is binding upon us. The first facts appearing are that plaintiff resided and the tug was registered at Ketchikan. Without more, these facts would require the conclusion that it was taxable there, under the rules already stated. We find nothing in the other facts stated which must necessarily upset this conclusion. The

charter did not completely turn the tug over to Park to be used as its own property; on the contrary, it required plaintiff to furnish the crew and supplies for the tug and keep it in operating condition. In view of those requirements, all that Park could do by way of direction, supervision and control was to direct when and where the tug should be used. It does not appear to have lain idle very much, or to have been kept in any one place when at work. One of the kelp beds to which it made trips, that off San Nicholas Island, was in Ventura County (Pol. Code, sec. 3964); another, off Santa Cruz Island, was in Santa Barbara County (Pol. Code, sec. 3950); a third, at Point San Mateo, was at or near the boundary line between Orange and San Diego Counties (Pol. Code, sec. 3938); and only the fourth, that off Point Dume, could have been in Los Angeles County. We take judicial notice that Point Dume is in that county, and this kelp bed must have been in that county if, as found, it was "immediately adjacent to" that point. Thus, only two of the five places at which, according to the findings, the tug spent its time, were in Los Angeles County and we have no information as to the proportions of its time spent in the various places. Moreover, it is plain that it must have gone entirely outside the State of California when going to and from the islands above mentioned; and it may have done so in going to the other places, but as to that the findings are silent. The original charter was for only fourteen and one-half months. It was renewed for one year, and while there was an option for a further term of five years, it was not exercised and can have little effect on the situs of the tug. Upon all the facts, the question whether the tug had acquired a *permanent* situs away from Ketchikan, as it must, under the authorities already cited, in order to be taxable elsewhere, was a debatable one. If the trial court had regarded these various matters as sufficient to overcome the inference arising from plaintiff's residence and the registration of the tug, its action might have been binding upon us; but their tendency in that direction was not so strong that the trial court was required so to regard them.

Defendant relies to a considerable extent on *Old Dominion S. S. Co.,* v. *Virginia,* (1905) 198 U.S. 299 [25 S.Ct. 686, 49 L.Ed. 1059]; but, as stated in *Southern Pacific Co.* v. *Kentucky ex rel. Alexander, supra,* (1911) 222 U.S. 63, 72

[32 S.Ct. 13, 56 L.Ed. 96, 100], " . . . in that case the judgment was rested upon the fact that the vessels had for years been continuously and exclusively engaged in the navigation of the Virginia waters, which state had thereby acquired jurisdiction for imposing a tax as upon property which had become incorporated into the tangible property within her territory." No such state of facts exists here.

The judgment is affirmed.

Shinn, Acting P. J., and Wood (Parker) J., concurred.