[Civ. No. 28127. Second Dist., Div. Three. Apr. 1, 1966.]

STAR-KIST FOODS, INC., et al., Plaintiffs and Appellants, v. H. L. BYRAM, as County Tax Collector, etc., et al., Defendants and Respondents.

Thomas M. Crehan for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, and John D. Cahill, Deputy County Counsel, for Defendants and Respondents.

FRAMPTON, J. pro tem.*—Appeal from a judgment disallowing apportionment of ad valorem tax on oceangoing vessels plying international waters.

The facts are not in dispute and the judgment of the trial court was based upon a stipulation of facts.

The complaint below set forth 15 causes of action, each one seeking to recover a refund of ad valorem taxes paid under protest on 15 ocean-going vessels owned and operated by the plaintiffs, or some of them, named therein. The action was tried only upon the first cause of action relating to the vessel O/S "SAN PEDRO BOY." By stipulation, all other causes of action were to be governed by the decision on the first cause of action.

The record before us discloses that the plaintiff Star-Kist Fishing Company, hereinafter referred to as Star-Kist, is a corporation duly organized and existing under the laws of the State of Delaware. It had qualified to do, and was engaged in, business in California. Plaintiffs John Rados, Andrew Tipich and John Tipich were, at all times material to the issues herein, domiciled in and were residents of the County of Los Angeles. Star-Kist and the above individually named plaintiffs were the owners of the fishing vessel, the O/S "SAN PEDRO BOY," Official Number 235521. The vessel is documented under the laws of the United States, with its home port at Los Angeles, California. The vessel is engaged in fishing princi-

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

pally on the high seas, and returns its catch to its home port. According to appellants, their vessel operates out of the Port of Los Angeles and engages in fishing operations on the high seas, mainly off Mexico, Equador and Peru. A schedule of departure and arrival times from and to its home port discloses that for the period of January 1, 1958, through December 31, 1958, the vessel was operating outside the territorial boundaries of the County of Los Angeles for a total of 150 days.[1] The record does not show that during this time, nor at any other time while the vessel was engaged in its fishing operations, it made contact with any other port or engaged in interstate activity. During the remainder of the year, the vessel was physically present in its home port of Los Angeles.

In 1959, the County Assessor of Los Angeles County assessed the vessel, for purposes of taxation, at its full unapportioned cash value, to wit: $11,500, and subsequently taxes were levied thereon in the amount of $836.70. The appellants paid these taxes under protest and brought the action below to recover the total amount paid.

Appellants concede that the assessor had the power and jurisdiction to make an assessment against the vessel and that the County of Los Angeles had the right to collect a tax based upon such an assessment, but they assert that the assessed value of the vessel should have been limited to the portion of such value as is equal to the fraction of the tax year which the vessel spent within the jurisdiction of Los Angeles County. The trial court sustained the assessment as made and denied the relief sought by the appellants. It is from this judgment that the appellants prosecute this appeal.

Section 401 of the Revenue and Taxation Code provides that ". . . all taxable property shall be assessed at its full cash value." The pertinent portion of the California Constitution provides that "All property subject to taxation shall be assessed for taxation at its full cash value." (Cal. Const., art. XI, § 12.)

In order to have but one uniform system of taxation relating to instrumentalities of commerce which travel in international routes, the courts have developed a body of law commonly referred to as the "home port" doctrine. ▉ Under this

---

[1]This period appears to have been chosen by the parties as a convenient test period for the purpose of expediting the trial of the issues in the court below.

rule of law, a vessel plying the high seas may be taxed at its full value in its home port or in the true domicile of its owner, and no other jurisdiction, including those ports visited by the vessel during its voyages, has the power to tax it. This rule is based to some extent upon the concept of exclusive federal jurisdiction once an instrumentality of commerce leaves its home port for international waters. (*Morgan* v. *Parham* (1873) 83 U.S. (16 Wall.) 471 [21 L.Ed. 303].)

It has been said that, ''Whatever may have been the law, there is no question as to the governing rule at present which is that vessels are to be taxed where the owner is domiciled unless they have acquired an actual situs elsewhere. 'The general rule has long been settled,' said the Supreme Court of the United States in 1905, as to vessels plying between the ports of different states, engaged in the coastwise trade, that the domicile of the owner is the situs of a vessel for the purpose of taxation, wholly irrespective of the place of enrollment, subject, however to the exception that where a vessel engaged in interstate commerce has acquired an actual situs in a state other than the place of the domicile of the owner, it may there be taxed because within the jurisdiction of the taxing authority.' Ordinarily the domicile of the owner governs. It is only when the vessel has acquired an actual situs in a place other than the domicile of the owner that such place is the situs for taxation as to make it subject to taxation there. Vessels may acquire a taxable situs merely because of use in a particular place, but it is unusual and it requires a clear case to show the acquisition of such a situs. If vessels are navigated wholly within the limits of one state, they acquire an actual situs there and may be taxed in that state although the owner is domiciled in another state. On the other hand, if a vessel is engaged in traffic between the ports of two or more states, more or less continuously, it would seem that it can acquire no actual situs in any of such ports, other than the home port, i.e., the domicile of the owner. As said by the Supreme Court of the United States, 'it is one thing to find that a movable, such as a railway car, a stock of merchandise, or a herd of cattle, has become a part of the permanent mass of property in a particular state, and quite another to attribute to a sea-going ship an actual situs at any particular port into which it goes for supplies or repairs or for the purpose of taking on or discharging cargo or passengers. A ship is not intended to stay in port, but to navigate the seas. Its stay in port is a mere

incident of its voyage, and to determine that it has acquired an actual situs in one port rather than another would involve such grave uncertainty as to result often in an entire escape from taxation.' '' (2 Cooley, Taxation (4th ed. 1924) § 453, pp. 991, 992-997.)

The ''home port'' doctrine applied to the taxation of ocean-going vessels was first laid down by the Supreme Court of the United States in *Hays* v. *Pacific Mail Steamship Co.* (1855) 58 U.S. (17 How.) 596 [15 L.Ed. 254], where it was held that California was without jurisdiction to tax oceangoing vessels, owned by a corporation domiciled in New York, which were engaged in interstate commerce between their home port of New York and various ports, including San Francisco, located on the Pacific coast.

California has adopted and applied the ''home port'' doctrine in the following situations: Where the vessel was registered at Port Townsend, Territory of Washington and the ship's managing owner was domiciled there and the vessel's contact wth California was only transient in the course of its voyages, California was without jurisdiction to tax. (*City & County of San Francisco* v. *Talbot* (1883) 63 Cal. 485.) A vessel engaged in commerce on the high seas, whose registry described her as ''of San Francisco,'' and whose managing owner was a resident of the City and County of San Francisco, was held to be subject to tax at her ''home port'' of San Francisco. (*Olson* v. *City & County of San Francisco* (1905) 148 Cal. 80 [82 P. 850, 113 Am.St.Rep. 191, 7 Ann.Cas. 443, 2 L.R.A. N.S. 197].) Vessels which had not, by the manner of their use, acquired an actual situs elsewhere, but which were employed in foreign or interstate commerce, were properly assessed at the domicile or residence of their sole owner, at which place they were registered under the laws of the United States. (*California Shipping Co.* v. *City & County of San Francisco* (1907) 150 Cal. 145 [88 P. 704].) An ocean going tug, owned by a resident of Ketchikan, Territory of Alaska, and registered at the same place, did not attain a permanent situs in Los Angeles County for the purpose of taxation, where it appeared that the tug had been chartered to and used by a corporation, whose principal place of business was in Los Angeles County, for approximately 27 months in kelp harvesting operations in the waters off the coast of California, and where the vessel made 10 to 12 trips each month between San Pedro and the kelp beds where the harvesting operations took place. (*Sayles* v. *County of Los Angeles,* 59 Cal.App.2d 295

[138 P.2d 768].) The Supreme Court of California applied the "home port" doctrine to aircraft domiciled and based in foreign countries but engaged in international air commerce, where, in connection with such commerce, the planes would land at and take off from the International Airport at Los Angeles. The Supreme Court held that such aircraft were taxable only by the authorities at their home port and that Los Angeles County was without jurisdiction to tax the aircraft even on an apportioned basis. (*Scandinavian Airlines Systems, Inc.* v. *County of Los Angeles* (1961) 56 Cal.2d 11 [14 Cal. Rptr. 25, 263 P.2d 25].)

The Supreme Court of the United States has recently summed up the rule with respect to the right of the domiciliary state to tax instrumentalities of interstate commerce as follows: "Since Miller this Court has decided numerous cases touching on the intricate problems of accommodating, under the Due Process and Commerce Clauses, the taxing powers of domiciliary and other States with respect to the instrumentalities of interstate commerce. None of these decisions has weakened the pivotal holding in Miller—that a railroad or other taxpayer owning rolling stock cannot avoid the imposition of its domicile's property tax on the full value of its assets merely by proving that some determinable fraction of its property was absent from the State for part of the tax year. This Court has consistently held that the State of domicile retains jurisdiction to tax tangible personal property which has 'not acquired an actual situs elsewhere.' [Citation.]

"This is because a State casts no forbidden burden upon interstate commerce by subjecting its own corporations, though they be engaged in interstate transport, to nondiscriminatory property taxes. It is only 'multiple taxation of interstate operations' [citation], that offends the Commerce Clause. And obviously multiple taxation is possible only if there exists some jurisdiction, in addition to the domicile of the taxpayer, which may constitutionally impose an ad valorem tax.

"Nor does the Due Process Clause confine the domiciliary State's taxing power to such proportion of the value of the property being taxed as is equal to the fraction of the tax year which the property spends within the State's borders. . . . *Northwest Airlines, Inc.* v. *Minnesota,* 322 U.S. 292 [64 S.Ct. 950, 88 L.Ed. 1283, 153 A.L.R. 245], reaffirmed the principle established by earlier cases that tangible property for which *no* tax situs has been established elsewhere may be taxed to its

full value by the owner's domicile. [Citations.] If such property has had insufficient contact with States other than the owner's domicile to render any one of these jurisdictions a 'tax situs,' it is surely appropriate to presume that the domicile is the only State affording the 'opportunities, benefits, or protection' which due process demands as a prerequisite for taxation. [Citation.]

"Accordingly, the burden is on the taxpayer who contends that some portion of its total assets are beyond the reach of the taxing power of its domicile to prove that the same property may be similarly taxed in another jurisdiction." (*Central R.R. Co. of Pa.* v. *Pennsylvania,* 370 U.S. 607, 611-613 [82 S.Ct. 1297, 1301, 8 L.Ed.2d 720, 724-725].) ▮ While the Supreme Court of the United States was dealing here with the right to tax the rolling stock of a railroad engaged in interstate commerce, the principles enumerated with respect to the right of the domiciliary to tax for the full value of the equipment unless the taxpayer establishes that the property has attained an actual situs elsewhere, and that the taxing power of the domiciliary, in the absence of another tax situs, is not confined to such portion of the value of the property being taxed as is equal to the fraction of the tax year which the property spent within the state's borders, are applicable and controlling in the case at bench.

The facts disclose that three of the individual owners of the vessel herein taxed were residents of and were domiciled in Los Angeles County, and the Star-Kist Fishing Company, which was part owner, was doing business in California. According to the complaint, the plaintiff Star-Kist Fishing Company is alleged to be part owner of 9 of the 15 vessels which were taxed, and which are the subject of this litigation. The correspondence between the plaintiffs below and the defendant tax collector relating to the payment of the taxes under protest originated from Terminal Island, California, and was written on the letterheads of Star-Kist Foods, Inc. The letters were signed by one T. E. Leitner as auditor for Star-Kist Foods, Inc. The exact relationship between Star-Kist Fishing Company and Star-Kist Foods, Inc. is not disclosed by the record. The vessel, the O/S "SAN PEDRO BOY," Official Number 235521, was documented under the laws of the United States with its home port at Los Angeles, California. It would leave its home port and engage in fishing operations upon the high seas and then return with its catch to its home port. The

record does not disclose that its operations while away from its home port were conducted in such manner that the vessel attained an actual situs elsewhere. Under these circumstances the ''home port'' doctrine is applicable and the County of Los Angeles had the jurisdiction and power to assess the vessel, for the purpose of taxation, and to collect a tax based upon the unapportioned cash value of the vessel.

The judgment is affirmed.

Ford, J., and Kaus, J., concurred.