*172
 
 BROWN (Gerald), P. J.
 

 Defendants County and City of San Diego appeal from judgments requiring them to refund ad valorem personal property taxes levied against the full value of plaintiffs’ fishing vessels
 
 Boyal Pad fie
 
 and
 
 Southern Padfic
 
 for the fiscal year July 1, 1964, to June 30, 1965.
 

 Joseph S. Martinac, a lifelong resident of Tacoma, Washington, is president and general manager of J. M. Martinac Shipbuilding Corp., Tacoma. The Martinac Corporation built the
 
 Boyal Pacific
 
 and
 
 Southern Padfic
 
 at its Tacoma shipyard. The vessels’ majority owners reside in Tacoma. The vessels’ federal licenses and enrollments, registered at the United States Customs House, Tacoma, designate Tacoma as their home port and Joseph S. Martinac as their managing owner. Pierce County, Washington, collects personal property taxes assessed against the full value of both vessels.
 

 During the 1964-1965 fiscal year, Joseph S. Martinac owned 20 percent of each vessel, and managed majority interests in them. He maintained the vessels’ bank accounts in Tacoma. The accounts required his signature on every check. The Martinac Corporation kept the vessels’ financial records, and expected to make any major repairs in Tacoma. Martinac authorized the vessels’ masters to hire crews, purchase fuel, manage the vessels at sea, and incur minor repair expense under $250.
 

 The vessels fish in the eastern Pacific, ranging south to Peru, north to slightly north of San Diego. Not needing major repair, they have not been in Tacoma since construction. They enter foreign ports only for emergency repair. The vessels are at sea about 265 days each year. When a vessel is loaded with fish, the master contacts Martinac in Tacoma by radiotelephone. Martinac negotiates cargo insurance, investigates market prices and decides when to bring the vessel into port.
 

 The American Tunaboat Association holds its fish auctions in San Diego. The masters usually attend the auctions. Through constant telephone communication with the masters about prices Martinac decides when to sell.
 

 A vessel need not be in port to take part in an auction. For convenience, however, Martinac directs loaded vessels into San Diego. This allows the masters and crews, mostly San Diegans, to be at home. The vessels then travel to San Pedro canneries for unloading. A Long Beach certified public accountant prepares trip settlements while the vessels are in San Pedro. The vessels then return to San Diego, refuel,
 
 *173
 
 pick up a crew and return to the high seas. On occasion the masters have had minor repairs made in San Diego.
 

 The question is whether the County and City of San Diego may levy ad valorem personal property taxes against the full value of plaintiffs’ vessels. In
 
 Scandinavian Airline System, Inc.
 
 v.
 
 County of Los Angeles,
 
 56 Cal.2d 11, 30 [14 Cal.Rptr. 25, 363 P.2d 25], our Supreme Court stated as a settled federal and California principle: ‘1 Ocean-going vessels, plying international waters, engaged in either interstate or foreign trade, even when owned by residents or citizens of this country, may not be taxed by any jurisdiction other than that of their home port. ...”
 

 In their opening brief, defendants assert: 1) the home port doctrine is another name for the common law rule of
 
 mobilda sequuntur personam,
 
 subjecting tangible, movable personal property to taxation only by the jurisdiction of the owner’s domicile
 
 (Hays
 
 v.
 
 Pacific Mail S.S. Co.,
 
 58 U.S. (17 How.) 596 [15 L.Ed. 254];
 
 St. Louis
 
 v.
 
 Wiggins Perry Co.,
 
 78 U.S. (11 Wall.) 423 [20 L.Ed. 192];
 
 Ayer & Lord Tie Co.
 
 v.
 
 Kentucky,
 
 202 U.S. 409 [50 L.Ed. 1082, 26 S.Ct. 679];
 
 Southern Pac. Co.
 
 v.
 
 Kentucky,
 
 222 U.S. 63 [56 L.Ed. 96, 32 S.Ct. 13]); 2) the owner’s domicile rule is inapplicable “if the owner, by his own act, gives to such property a permanent location elsewhere”
 
 (Southern Pac. Co.
 
 v.
 
 Kentucky, supra,
 
 222 U.S. 63, 68 [56 L.Ed. 96, 98, 32 S.Ct. 13, 15];
 
 Brock & Co.
 
 v.
 
 Board of Supervisors,
 
 8 Cal.2d 286 [65 P.2d 791, 110 A.L.R. 700]) ; 3) San Diego is plaintiffs’ vessels’ permanent location. Supporting the last assertion, defendants, stressing the masters’ authorized powers, rely heavily upon
 
 United States Whaling Co.
 
 v.
 
 King County,
 
 96 Wash. 434 [165 P. 70, 71], in which the Supreme Court of Washington upheld King County’s taxation of whaling vessels. The case is neither controlling nor instructive. The whaling vessels, owned by a South Dakota corporation authorized to do business in Washington, were built in Seattle, went to sea from Seattle each May, returned to Seattle each October, remained in Seattle from October to May, were managed in Seattle, were repaired, fueled and staffed in Seattle. They were federally registered in Alaska. The corporate directors resided in South Dakota (1), Scotland (1), Norway (2) and Seattle (1). Seattle is in King County.
 

 Unlike the whaling vessels, plaintiffs’ vessels are at sea 265 days each year, spending only two-thirds of the remaining 100 days in San Diego. San Diego is neither the situs of federal registration, nor the jurisdiction encompassing ma
 
 *174
 
 jority ownership, management, decision making, or cargo unloading. In substance, plaintiffs’ vessels are located primarily at sea, entering ports only to deliver their catch, obtain provisions and repairs, and return to the high seas. San Diego is their port of convenience, but neither their permanent location nor home port. (See
 
 Star-Kist Foods, Inc.
 
 v.
 
 Byram,
 
 241 Cal.App.2d 313 [50 Cal.Rptr. 381] ;
 
 Sayles
 
 v.
 
 County of Los Angeles,
 
 59 Cal.App.2d 295 [138 P.2d 768] ;
 
 Scandinavian Airlines System, Inc.
 
 v.
 
 County of Los Angeles, supra,
 
 56 Cal.2d 11;
 
 San Francisco
 
 v.
 
 Talbot,
 
 63 Cal. 485.)
 

 Judgments affirmed.
 

 Coughlin, J., and Whelan, J., concurred.